# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| INGRID LAWRENCE SMYRNA in her representative capacity as the personal representative of the Estate of ANDREW JUNIOR SMYRNA, deceased; Bria Maddox on behalf of Jai Maddox, the minor children of ANDREW JUNIOR SMYRNA, deceased, and Ashley Weems on behalf of Brooklyn Smyrna, the minor children of ANDREW JUNIOR SMYRNA, deceased, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | CIVIL ACTION NO. <u>1:21-cv-04481-AT</u> |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| GEORGIA STATE TROOPER BRANDON BYRD; ATLANTA POLICE OFFICER AUBREE HORTON; TIM BURELL; JOSEPH RIVERA; HERTZ VEHICLES, LLC; and NATIONAL INSURANCE CRIME BUREAU, INC., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

**COMES NOW** Plaintiff Ingrid Lawrence Smyrna, in her capacity as the

personal representative of the Estate of Andrew Junior Smyrna, deceased

(hereinafter "Plaintiff"), and Plaintiffs Bria Maddox and Ashley Weems in their

respective capacities as next of kin to Jai Maddox and Brooklyn Smyrna, the

surviving minor children of Andrew Junior Smyrna, by and through their undersigned counsel of record and hereby file their Complaint for Damages.

## JURISDICTION, VENUE, AND PARTIES

1.      The above-captioned civil action for damages arises out of the unlawful warrantless arrest and shooting death of decedent Andrew Junior Smyrna and is brought pursuant to 42 U.S.C. § 1983 and § 1988 for violations of Mr. Smyrna's federal rights as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution, and pursuant to Georgia law.

2.      This Court has jurisdiction over the federal claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

3.      Defendants are subject to the jurisdiction of this Court.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the subject incident occurred in DeKalb County within the Northern District of Georgia.

5.      At the time of the subject incident, decedent Andrew Junior Smyrna was a 32-year old African-American male and resident of the State of Georgia.

6.      Plaintiff Ingrid Lawrence Smyrna was Mr. Smyrna's mother and is the duly-appointed personal representative and executor of Mr. Smyrna's estate.

7.      Plaintiff Bria Maddox is the mother and next of kin to Jai Maddox, a surviving minor child of Mr. Smyrna.

8.      Plaintiff Ashley Weems is the mother and next of kin to Brooklyn Smyrna, a surviving minor child of Mr. Smyrna.

9.      Defendant Trooper Brandon Byrd ("Byrd") is a Georgia State Trooper and is being sued in his individual capacity.

10.     Defendant Aubree Horton ("Horton") is a police officer employed by the City of Atlanta and is being sued in his individual capacity.

11.     Defendant Hertz Vehicles, LLC ("Hertz Vehicles") is a foreign limited liability company registered to transact business in Georgia.

12.     Defendant Hertz Vehicles owns the entire rental fleet of vehicles that is leased and recovered by "The Hertz Corporation" and its employees ("The Hertz Corporation"), including but not limited to the rental vehicle Mr. Smyrna was driving at the time of the subject incident.

13.     Defendant Hertz Vehicles does not have its own employees to act on its behalf or for its benefit with regard to the lease and recovery of its vehicles.

14.     Defendant Hertz Vehicles authorized The Hertz Corporation and its employees to act on its behalf and for its benefit as an agent with regard to the lease and recovery of the rental vehicles owned by Hertz Vehicles.

15.     Defendant Tim Burell ("Burell") is a private citizen employed by The Hertz Corporation as a corporate security manager and was all times material herein acting within the course and scope of agency and for the benefit of

Defendant Hertz Vehicles. See U.S. v. Habersham Properties, Inc. 319 F. Supp. 2d 1366 (N.D. Ga. 2003).

16.    Defendant National Insurance Crime Bureau, Inc. ("NICB") is a foreign nonprofit corporation registered to transact business in Georgia.

17.    Defendant NICB employs over 400 private citizens as "special agents" who collaborate and act in concert with law enforcement officials and NICB members to "convene[] the collective resources needed to help prevent, detect, investigate and deter insurance fraud and vehicle theft crimes."[1]

18.    Defendant Joseph Rivera ("Rivera") is a private citizen employed by NICB as a "special agent" and was at all material times acting within the course and scope of his employment.

19.    NICB's corporate mission and business objectives are focused on having its special agents lead a "united effort" to combat "major criminal activity in concert with [its] members and law enforcement agencies nationwide."[2]

20.    At all times material herein, Hertz was a member of NICB and routinely relied on NICB's collaboration and assistance to recover and protect its rental fleet from insurance fraud and vehicle theft crimes.

---

[1] https://www.nicb.org/about-nicb; https://www.nicb.org/how-we-help/investigations.

[2] Id.

## FACTUAL ALLEGATIONS

21.     Defendant Hertz Vehicles is the legal owner of the 2019 silver Chevrolet Camaro Mr. Smyrna was driving (the "Camaro" or "rental car") and pursuant to a written rental contract, agreed to temporarily lease the vehicle out of its legal possession from January 18, 2020 through and until January 31, 2020 (the "rental period").

22.     On the morning of January 23, 2020 and prior to the expiration of the rental period, the Camaro improperly appeared on Hertz's "overdue" report.

23.     Defendant Burell began conducting an internal investigation into the payment method used to rent the vehicle from Hertz, and discovered information indicating that a potentially fraudulent credit card may have been used to induce Hertz to enter the rental contract.

24.     On the morning of January 23, 2020 and before completing Hertz's internal investigation into potential credit card fraud, Defendant Burell coordinated with Defendant Joseph Rivera to immediately recover physical possession of the rental car that same day.

25.     Defendants Burell and Rivera had knowledge that the rental car had not been "stolen" and was not scheduled to be returned to Hertz until January 31, 2020.

26.     Defendant Burell remotely tracked the Camaro's location in Fulton County and directed Defendant Rivera to said location to recover the rental car.

27.     Defendant Rivera went to the location identified by Defendant Burell to recover the Camaro but observed that the rental car was occupied by two unidentified males and was being driven toward DeKalb County.

28.     Defendants Burell and Rivera had no authority as private citizens to recover the occupied rental car or to seize and arrest the vehicle's unidentified driver and passenger.

29.     Shortly before noon on January 23, 2020, Defendants Burell and Rivera contacted Defendants Byrd and Horton and provided the officers with information urging and influencing them in favor of recovering the occupied rental car by stopping the vehicle and arresting its occupants.

30.     The rental car had not been reported as stolen to any law enforcement agency.

31.     No Defendant had an arrest warrant or reason to believe that the unidentified vehicle occupants had committed credit card fraud or any other crime.

32.     No Defendant had any information regarding the identities of the rental car's driver or passenger.

33.    Defendants Burell and Rivera asked and Defendants Byrd and Horton agreed to recover the rental car by stopping the vehicle and arresting its unidentified occupants.

34.    Because the rental car was on the move and being driven into DeKalb County, Defendants Burell, Rivera, Horton, and Byrd formulated a mutual plan and each understood and agreed that Defendants Burell and Rivera would assist the officers by tracking the vehicle and directing the officers to its location in DeKalb County, and that Defendants Byrd and Horton would stop the vehicle and arrest its occupants at said location without a warrant or other legal authority (the "unlawful mutual plan").

35.    Defendants Burell and Rivera provided Defendants Byrd and Horton with the physical description of the occupied vehicle they asked and directed the officers to recover.

36.    Defendant Burell remotely tracked the rental car from Fulton to DeKalb County, and regularly updated Defendant Rivera and the officers as to the vehicle's movement and location.

37.    Defendant Rivera physically followed the Camaro into DeKalb County and regularly updated Defendant Burell and the officers as to the vehicle's movement and location.

38.     Defendants Rivera and Burell tracked and followed the rental car into DeKalb County until Mr. Smyrna briefly stopped and parallel-parked on the left side of Leslie Street, a narrow residential street, with the front of the vehicle facing eastbound.

39.     Mr. Smyrna began to leave and was in the process of making a lawful three-point turn to travel westbound on Leslie Street, at which point the front of the vehicle was facing north and was cross-wise in the middle of the street.

40.     In furtherance of the unlawful mutual plan, Defendants Rivera and Burell directed Defendants Byrd and Horton to Mr. Smyrna's location on Leslie Street as he was preparing to leave.

41.     Defendants Byrd and Horton relied on the information and direction provided to them by Defendants Burrell and Rivera and successfully located the Camaro as it was preparing to leave Leslie Street.

42.     Defendants Byrd and Horton would not have been able to locate the rental car without the direction provided to them by Defendants Burrell and Rivera.

43.     In furtherance of the unlawful mutual plan and without any emergency equipment activated, Defendant Byrd accelerated his patrol vehicle down the middle of Leslie Street directly toward the Camaro as it was leaving and while it was still in the middle of the street and completing a lawful three-point

turn, and suddenly stopped the front of his patrol vehicle directly in front of the Camaro's right bumper to cause an unavoidable minor collision to stop and terminate  Mr. Smyrna's personal liberty and freedom of movement as he was pulling forward to turn left onto Leslie Street (the "initial seizure").

44.    The State Patrol's crash investigator's initial report depicts the relative positions of the Camaro (V1) and Defendant Byrd's vehicle (V2) at the time of the initial seizure as follows:



45.    Immediately upon impact and in furtherance of the unlawful mutual plan, Trooper Byrd opened his driver's door and jumped out of the driver's seat with his weapon already aimed and pointed at Mr. Smyrna, and Officer Horton likewise began running toward the Camaro on foot with his gun trained on Mr. Smyrna; by doing so, both officers intended to terminate Mr. Smyrna's personal

liberty and freedom of movement without a warrant, probable cause, or other legal authority.

46.     Mr. Smyrna did not accelerate toward either officer or any other person, and did not use or threaten to use the vehicle as a deadly weapon.

47.     Mr. Smyrna reversed the rental car and carefully maneuvered the vehicle to turn further away from Trooper Byrd and his patrol vehicle before driving away down Leslie Street.

48.     At no point was Trooper Byrd or any other person standing in front of the Camaro or otherwise at imminent risk of receiving serious injury as Mr. Smyrna was turning and driving away.

49.     Within seconds after exiting his patrol vehicle and in furtherance of the unlawful mutual plan, Trooper Byrd began shooting and fired a total of nine (9) shots in rapid succession to stop the rental car as it was turning and driving away from him.

50.     Because Trooper Byrd had not put his patrol vehicle in park when he jumped out of the driver's seat, his vehicle began rolling away from him when he started shooting and ultimately struck a car parked on the right side of the street.

51.     The State Patrol's crash investigator's initial report depicts the movement of the Camaro (V1), Defendant Byrd's patrol vehicle (V2), and the

parked car Byrd's patrol vehicle struck (V3) as Defendant Byrd was shooting nine (9) rounds into the Camaro, as follows:



52.     Trooper Byrd fired the first two (2) shots while standing on the passenger's side of the Camaro, seconds after exiting his patrol vehicle, which shots entered through the Camaro's front right passenger's side windshield; Trooper Byrd fired an additional seven (7) shots while remaining on the passenger's side and from the back of the Camaro as Mr. Smyrna completed his turn and began driving away, which entered through the right passenger's side window, the right side of the canvas convertible top, and the back windshield.

53.     Defendant Rivera was watching Defendants Byrd and Horton carry out the unlawful mutual plan from inside his unmarked black sedan and regularly updated Defendant Burell regarding the events as they were unfolding and/or shortly thereafter.

54.    Defendants Burell and Horton did not make any effort to communicate an intent to withdraw their request or to intervene to stop the officers from carrying out the unlawful mutual plan.

55.    When Defendant Rivera saw the Camaro drive away after the shooting, he immediately began chasing it westbound on Leslie Street, and provided regular updates to Defendant Burell and the officers while doing so.

56.    Defendants Byrd and Horton re-entered their respective patrol vehicles and eventually joined Defendant Rivera's high-speed pursuit of the Camaro down Leslie Street, a curvy and narrow residential street.

57.    Defendants Byrd, Horton, and Rivera violated applicable traffic laws and ordinances and aggressively chased Mr. Smyrna at dangerously high speeds which well-exceeded the applicable speed limit, and which caused Mr. Smyrna to crash into trash cans, a parked vehicle, and a brick mailbox where he ultimately came to a stop.

58.    By aggressively and dangerously chasing Mr. Smyrna for no legitimate reason and without legal authority, and particularly after subjecting Mr. Smyrna to the immediately preceding events, Mr. Smyrna was placed in reasonable apprehension that Defendants Byrd, Horton, or Rivera would use any one of their respective vehicles as a weapon and would strike the Camaro and cause him further injury.

59.   After successfully carrying out the unlawful mutual plan by recovering the rental car and arresting its occupants without a warrant, Trooper Byrd and Officer Horton allowed Defendant Rivera to continue assisting them at the scene entirely unsupervised.

60.   At all times material herein, Defendant Rivera was wearing a vest displaying the word "POLICE" in large bold yellow letters:



61.   Defendant Rivera was not a police officer.

62.   Mr. Smyrna bled out and died from his fatal gunshot injury at the scene.

## COUNT I
## 42 U.S.C. § 1983
## Excessive Deadly Force Claims against
## Defendant Byrd

63.    Defendant Byrd used objectively unreasonable deadly force in violation of the Fourth Amendment by shooting Mr. Smyrna in circumstances which presented no imminent threat of deadly harm.

64.    Trooper Byrd failed to give any warning before shooting Mr. Smyrna despite a warning being feasible.

65.    Defendant Byrd is liable to Plaintiffs for the damages proximately caused by his unlawful conduct in violation of Mr. Smyrna's clearly established federal rights including but not limited to Mr. Smyrna's pre-death pain and suffering and death, wrongful death, and the full value of Mr. Smyrna's life.

66.    Trooper Byrd's use of deadly force violated Mr. Smyrna's clearly established Fourth Amendment rights.

67.    Defendant Byrd is not entitled to qualified immunity and is liable under § 1983 for his use of excessive deadly force because every reasonable officer would have known that his use of deadly force was objectively unreasonable and would violate the Fourth Amendment.

68.     Although no state law claims are being asserted against Defendant Byrd herein, Defendant Byrd's use of deadly force constitutes the tort of aggravated assault and/or battery under Georgia law.

**COUNT II**
**42 U.S.C. § 1983 and Georgia Law**
**False Arrest, False Imprisonment, and Aggravated Assault Claims against**
**Defendants Byrd and Horton**

69.     Defendants Byrd and Horton unlawfully detained and deprived Mr. Smyrna of his personal liberty without a warrant, probable cause, or other legal authority.

70.     Defendants Byrd and Horton falsely imprisoned Mr. Smyrna without a warrant or other legal authority in violation of state law. O.C.G.A. § 17-4-20(a)(2).

71.     Defendants Byrd and Horton falsely arrested Mr. Smyrna without a warrant or other due process and without actual or arguable probable cause that he had committed any crime, in violation of Mr. Smyrna's clearly established Fourth and Fourteenth Amendment rights.

72.     Defendants Byrd and Horton are not entitled to qualified immunity and liable under § 1983 for the damages proximately caused by their unlawful conduct in violation of clearly established federal law including but not limited to Mr. Smyrna's pre-death pain and suffering and death, wrongful death, and the full value of Mr. Smyrna's life.

73.     Defendant Byrd committed assault and aggravated assault with a deadly weapon by using his patrol vehicle to accelerate toward and intentionally strike the front of the Camaro without justification.

74.     Defendants Byrd and Horton committed assault and aggravated assault with a deadly weapon by aiming their guns at and chasing Mr. Smyrna in their respective patrol vehicles which placed him in reasonable apprehension of immediately receiving a serious violent injury and/or death.

75.     Defendant Horton is not entitled to official immunity and is liable under Georgia law because he acted with actual malice and/or an intent to injure Mr. Smyrna.

76.     Although no state law claims are being asserted against Defendant Byrd herein, Defendant Byrd's unlawful conduct constitute torts under Georgia law.

**COUNT III**
**Georgia Law**
**False Imprisonment and Aggravated Assault Claims against**
**Defendants Burell, Rivera, Hertz, and NICB**

77.     Defendants Burell and Rivera instigated, urged, requested, caused, and directed Mr. Smyrna's unlawful warrantless arrest.

78.     Defendants Byrd and Horton had no legal authority or discretion to lawfully seize or arrest Mr. Smyrna. *See* O.C.G.A. § 17-4-20(a)(2).

79.     At all times material herein, Defendants Byrd and Horton were acting solely based on the information and direction provided to them by Defendants Burell and Rivera urging, influencing, and actively assisting them to recover Hertz's occupied rental vehicle by unlawfully arresting its occupants without a warrant.

80.     Defendants Burell and Rivera are liable for false imprisonment in procuring, causing, and directing Mr. Smyrna's unlawful warrantless arrest. O.C.G.A. § 51-7-20; *Ferrell v. Mikula*, 295 Ga. App. 326, 331, 672 S.E.2d 7, 12 (2008).

81.     Defendant Rivera is also liable for aggravated assault for recklessly chasing Mr. Smyrna down Leslie Street at dangerously high speeds after the shooting, which placed Mr. Smyrna in reasonable apprehension that Defendant Rivera would use his vehicle as a weapon to strike the Camaro and cause him further violent injury and/or death.

82.     Defendants Burell and Rivera are liable to Plaintiffs for the damages proximately caused by their unlawful conduct in violation of state law including but not limited to Mr. Smyrna's pre-death pain and suffering and death, wrongful death, and the full value of Mr. Smyrna's life.

83.     At all times material herein, Defendant Rivera was acting within the course and scope of his employment with NICB.

84.     At all times material herein, Defendant Burell was acting within the course and scope of his agency with and for the benefit of Hertz Vehicles.

85.     Defendants NICB and Hertz Vehicles are vicariously liable for the torts of Defendants Rivera and Burell within the course and scope of their employment and agency, respectively.

**COUNT IV**
**§ 1983 and Georgia Law**
**Conspiracy Liability**

86.     Defendants Burell, Rivera, Horton, and Byrd each had a mutual understanding and agreement and acted in concert to carry out the unlawful mutual plan to unlawfully arrest Mr. Smyrna without a warrant, in violation of state law and in violation of Mr. Smyrna's federal constitutional rights.

87.     While they were jointly engaged with and assisting Defendants Byrd and Horton in carrying out the unlawful mutual plan to deprive Mr. Smyrna of his constitutional and state law rights, Defendants Burell and Rivera were acting under color of law.

88.     Defendants Burell, Rivera, Horton, and Byrd are liable for civil conspiracy under § 1983 and Georgia law and are each jointly liable for all acts taken in furtherance of their mutual plan to recover the Camaro and arrest is occupants, including but not limited to false imprisonment, assault/battery, and excessive deadly force.

89.     Defendants Burell, Rivera, Horton, and Byrd are liable for Mr. Smyrna's pre-death pain and suffering and death, wrongful death, the full value of Mr. Smyrna's life, and all other damages arising out of Mr. Smyrna's unlawful arrest and shooting death in violation of his constitutional and state law rights.

90.     At all times material herein, Defendant Rivera was acting within the course and scope of his employment with NICB.

91.     At all times material herein, Defendant Burell was acting within the course and scope of his agency with and for the benefit of Hertz Vehicles.

92.     Defendants NICB and Hertz Vehicles are vicariously liable for the torts of Defendants Rivera and Burell within the course and scope of their employment and agency, respectively.

## COUNT V
## Punitive Damages

93.     Defendants' conduct as described herein evidences willful misconduct, malice, fraud, wantonness, oppression, and an entire want of care which is sufficient to establish that Defendants acted with conscious indifference to the consequences of their actions.

94.     Plaintiffs are entitled to an award of punitive damages under state and federal law.

## COUNT VI
## Attorney's Fees

95.     Plaintiffs are entitled to an award of costs, including but not limited

to reasonable attorney's fees, under 42 U.S.C. § 1988.

96.     Defendants acted intentionally and in bad faith, and have caused

Plaintiffs unnecessary trouble and expense, entitling Plaintiffs to an award of

attorneys' fees under O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that they have a trial before a jury on all issues

and judgment against Defendants as follows:

(a)     That Plaintiffs recover general, compensatory, and punitive damages

based on Defendants' violations of state and federal law;

(b)     That Plaintiffs recover reasonable attorney's fees and expenses of

litigation under 42 U.S.C. § 1988 and O.C.G.A. § 13-6-11;

(c)     That all issues be tried before a jury; and

(d)     For such other and further relief as the Court deems just and proper.

This 25th day of February, 2022.

/s/ Dianna J. Lee
L. Chris Stewart
Georgia Bar No. 142289
Justin D. Miller
Georgia Bar No. 001307
Dianna J. Lee

Georgia Bar No. 163391

**STEWART MILLER SIMMONS TRIAL ATTORNEYS**
55 Ivan Allen Jr. Blvd.
Suite 700
Atlanta, Gerogia 30308
(844) 874-2500 main
cstewart@smstrial.com
jmiller@smstrial.com
dlee@smstrial.com

/s/Thomas E. Reynolds, Jr.
Thomas E. Reynolds, Jr.
Georgia Bar No. 778864

**REYNOLDS LAW GROUP, LLC**
3390 Peachtree Road, NE, Suite 1100
Atlanta, Georgia 30326
Telephone: (888) 665-0241
treynolds@thomasreynoldslaw.com